JAMES A. WILLIAMSON *et al.*, Appellants, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellees.

Pleading: AMENDMENTS: SCOPE OF. Under the provisions of section 2689 of the Code, permitting amendments to pleadings "by inserting other allegations material to the case," *held*, that a petition asking damages because of the breach of a contract, which, upon an appeal to the Supreme Court, was held to be void as against public policy, might be amended so as to eliminate the objectionable feature of the contract in question, as well as changing its provisions in other important particulars.

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

FRIDAY, FEBRUARY 5, 1892.

IN 1875 the plaintiffs, four in number, in their own behalf, and for the benefit of divers other persons, brought this action, stating in their petition among other things as follows: "Your petitioners further represent that heretofore, to-wit, on or about the —— day of June, 1867, they entered into a contract with the defendant to the tenor and effect following, to-wit: The defendant proposed to stipulate and contract with the plaintiffs that if they (the plaintiffs) would furnish the money, and purchase, procure and deed, and cause to be deeded, to the defendant, twenty-one lots which were then designated by the defendant, on the east side of the Des Moines river, in the city of Des Moines, known as 'East Des Moines,' in said county, making a sufficient plat of ground for the defendants' depots, side tracks, switches, and transfer grounds, the defendant, in consideration thereof, would build all its depots, both passenger and freight, which it might or would build in the said city of Des Moines, on the east side of the Des Moines river, in the said East

Des Moines, and on the lots so transferred and conveyed to it, the said defendant. As an inducement to the plaintiffs and others to enter into said contract, the defendant represented and held out to them that the said depots would be very large, fine structures; would be such a vast improvement to that part of the city of Des Moines as to greatly enhance the value of the city property therein, and enrich the owners and holders of property in the vicinity thereof. In view of the representations and inducements thus held out to them, the plaintiffs agreed to and accepted the said proposition upon the terms offered by the defendant, and they and the other persons for whose benefit this suit is instituted, being residents and property holders on the east side of the Des Moines river, in the said East Des Moines, and believing that they would be greatly benefited thereby, and believing that the said depots would be a great improvement, especially to that part of the city of Des Moines, were induced to and did spend a great deal of valuable time, and incurred a large amount of expense, in circulating subscriptions and obtaining money with which to purchase lots, and in getting the same conveyed to the defendant. By a long and laborious effort they raised and furnished the sum of fifteen thousand dollars, and expended the same in purchasing and conveying, and procuring to be conveyed, to the defendant the following described lots, to-wit:    *    *    *    which said lots, and the conveyance thereof, were taken and accepted by the defendant under and by virtue of the said express contract with the plaintiffs herein that the said depots of the defendant, both freight and passenger, and the only depots that the defendant would build or have in the city of Des Moines, should be located and built on the said lots, east of the Des Moines river, in the said East Des Moines; and the defendant has ever since held, occupied and used the said lots for its freight depot, side tracks, switches, etc., in and about the operations

of its said road." Then follow other allegations
as to the value of the lots conveyed; that the defendant
company in the transaction contrived to cheat and
defraud the plaintiff; that it has commenced to
construct its principal depot on the west side of the
river; that it constructed but a temporary depot on
the east side; and other facts showing a breach of
the contract.   Such issues were formed thereon that the
cause was tried, resulting in a judgment for the plain-
tiffs, which judgment, on appeal, was reversed on the
ground that the contract set out and established was
against public policy.   See *Williamson v. Chicago, R.
I. & P. Ry. Co.*, 53 Iowa, 126.

Thereafter the plaintiffs in the circuit court filed
their substituted petition in five counts, in which all
the plaintiffs in interest are named, but omitting
therefrom all averments as to an agreement by the
defendant company to construct all its depots, etc., on
the east side of the river; but averring that it agreed,
in consideration of the conveyance of said lots, that it
would build and erect thereon, at the earliest day pos-
sible, its railroad tracks and side tracks and a large
freight depot, a large, elegant and expensive passenger
depot, and keep open, support and furnish said depots
as permanent improvements in said east city upon said
lots for the purpose of receiving and discharging
freights and passengers for the said city.   It also repre-
sented that it would erect and maintain a roundhouse
upon said lots, together with extensive machine shops,
amply sufficient to supply all needed work and repairs
on its said railroad;  and that it would keep in constant
employment in said buildings on said premises a large
number of men in and about such depots, freight
house, machine shops and roundhouse;  and that all of
said buildings and improvements would be erected
upon said lots as soon as title should be obtained by
defendant thereto, and the same could be built; and
that the cost of such buildings, depots, roundhouse

and machine shop, etc., should be at least five hundred
thousand dollars, and be of that value; and then and
there proposed to contribue to such fund as might be
necessary for the purchase of said property the sum of
five thousand dollars, if the plaintiffs would furnish the
residue; and agreed with the plaintiffs that, if they
would contribute moneys, secure to it title to said lots,
and promises and property in sufficient amount to
secure the conveyance of said property to the defend-
ant, it would build and erect thereon all of the aforesaid
buildings and improvements at the earliest day possi-
ble, and keep and maintain the same, with the number
of men aforesaid. The other averments are, in the
main, as in the original petition, varying only in the
matters unimportant to the issues presented in
the record.

There was a motion to strike the substituted peti-
tion from the files for reasons as follows: *First*. Said
amended petition substantially changes the claim upon
which the action was commenced. *Second*. It is not
such a change of pleadings by amendment or substitu-
tion as is authorized by the statute. *Third*. It in each
count, therefore, is founded upon a totally different
contract and agreement from that contained in the
action as originally brought. *Fourth*. It alleges a
new and different contract, made in a new and differ-
ent way, with new and different parties. The circuit
court sustained the motion, and the plaintiffs appeal.
*Reversed.*

*Phillips & Day* and *Cole, McVey & Clark*, for
appellants.

*T. S. Wright* and *Cummins & Wright*, for appellee.

GRANGER, J.—The case presents the legal proposi-
tion whether or not the substituted petition so changes
the claim for which the suit was brought that the

defendant should not, as a matter of law, be required to answer it. With the condition of the record we are not to consider any discretionary authority of the trial court in refusing the petition, for it is apparent from the motion that it was stricken from the files because it so changed the action as to be without any legal basis. In determining the question we are to be guided by Code, section 2689, as follows: "The court may, on motion of either party at any time, in furtherance of justice, and on such terms as may be proper, permit such party to amend any pleadings or proceedings by adding or striking out the name of a party or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleadings or proceedings to the facts proved."

The arguments in the case are directed to the point whether or not there has been a substantial change in the claim or cause of action because of the substituted petition. The appellee says in argument that the substituted petition presents "a new cause of action." A reference to the section will show that the literal language does not limit the court in allowing amendments to cases in which "the amendment does not change substantially the claim," but such limitation applies to cases of amending "by conforming the pleadings or proceedings to the facts proved." Without saying that amendments are allowable that would work an absolute change of the claim in any case, the language of the section is such as to induce a liberal construction that the spirit of the legislation may be preserved. Without dispute, it may be said that the substituted petition changes the contract in some particulars from that set out in the original petition, to the extent, at least, that one of its provisions is omitted and others are added. But, because of such

facts, is the claim or cause of action changed? The appellee deals with the case as though the contract was the cause of action, which perhaps in more than one sense is true; for it is the contract that gave rise to the action, and but for which the plaintiffs claim would not be, conceding, as we must, the truth of the averments of the petition. But the phrase "cause of action" is sometimes used in a more restricted sense than at others, depending upon the subject to which it is applied or the object which it is to subserve. "Cause of action" has been held to mean "every fact which is material to be proved to entitle the plaintiff to succeed;" "every fact which the defendant would have a right to traverse." In such a sense it would embrace, not only the contract in the case, but the breach of it; for both must be proven in order to recover. Again, it has been held to mean, "not the whole cause of action, but that which, in popular meaning,—for many purposes, in legal meaning,—is the cause of action, viz., the act on the part of the defendant which gives the plaintiff his cause of complaint." *Jackson v. Spittall*, L. R. 5 C. P. 542. It has been held to mean, in a case involving the purchase of land, "the non-payment of the purchase price." *Borst v. Corey*, 15 N. Y. 505. It is sometimes said to be the breach of duty. *Howell v. Young*, 5 Barn. & C. 259; *Bank v. Ry. Co.*, 10 How. Pr. 1.

To our minds, the substituted petition works no substantial change in the claim or cause of action in the case. The plaintiffs ask to recover the money expended by them, and the value of their time lost because of the defendant's breach of the contract. It is this loss of money and time that induces or causes the action, and such is their "claim" in the case. By their amendent they have made some changes as to the facts on which they expect to recover, but not to the extent of making it another transaction. The gist of the transaction was in receiving the title to the lots

under a promise to do certain acts in payment for them. This is adhered to in both petitions. The details of the transaction, by which the whole cause of action may be known and properly presented for trial, are matters that come within the spirit of the law permitting amendments in furtherance of justice. That in so doing some facts are changed by way of averment, does not change the claim or cause of action, if there remains the same substantial ground of complaint. The allegation in the first petition that by the contract the defendant was to build all its depots on the east side would go only to increase the damages, if a valid contract. To strike it out, by way of amendment, is but to change the averments on which the same recovery is sought. It is still a contract for the purchase of the lots; and the law as to amendments is designed to permit the parties, sooner or later, to plead the actual facts. We are cited to many Iowa cases, none of which are directly in point, but all tend to a liberal rule, and favor the spirit of our conclusion in this case. A syllabus in *Pittsburgh Junction Ry. Co. v. McCutcheon*, 7 Atl. Rep. (Pa. Sup.) 146, is as follows: "Where the gist of the action remains the same, although the alleged incidents are different, the court has the right to permit the plaintiff to withdraw his original declaration and file an amended one." The plaintiff—defendant in error on appeal—brought his suit for damages to his leasehold by the construction of the defendant's railroad, alleging, in the first place, that the road was unlawfully constructed to his damage. His substituted declaration so changed the facts as to show that the road was legally constructed, and sought the damage under his constitutional right to compensation for property so injured. The case gives very strong support to our conclusion. This case is determinable largely upon the liberal provisions of our statute.

We think the trial court erred in sustaining the motion to strike the substituted petition, and its judgment is REVERSED.